**In re Lorraine EASTMAN, Debtor.**

**Lorraine EASTMAN, Appellant,**

v.

**Mark EASTMAN; Thomas H. Casey, Interim Trustee; United States Trustee; Robyn R. Devereaux, Appellees.**

BAP No. CC–94–1955–JePMe.

Bankruptcy No. SA 94–13830–JB.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Sept. 19, 1995.

Decided Oct. 30, 1995.

Douglas A. Johnson, Chino, CA, for appellant/debtor.

Mark K. Worcester, Irvine, CA, for appellee Mark Eastman.

## OPINION

Before JELLEN [1], PERRIS [2], and MEYERS, Bankruptcy Judges.

JELLEN, Bankruptcy Judge:

On motion of the debtor's former spouse, an unsecured claimant, the bankruptcy court dismissed the debtor's voluntary Chapter 7 petition pursuant to Bankruptcy Code § 305(a)(1) [3]. The debtor appeals. We reverse and remand.

### I. *FACTS*

On April 15, 1994, the debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code. Prior to the filing, the debtor and her former spouse, appellee Mark Eastman ("Eastman"), were parties to a marital dissolution proceeding in the California superior court. On November 10, 1993, the superior court entered its decree dissolving the marriage (the "Decree").

The Decree provided that the debtor would retain the family residence at 2163 East Clear Springs, Brea, California (the "Residence"), subject to her ability to refinance the Residence and thereby pay off certain community debts from the proceeds. The Decree also contemplated that the debtor would be required in the future to pay certain sums to Eastman to equalize the distribution of the parties' community real and personal property, but did not liquidate the amounts.

The Decree required the debtor to make the real property equalization payment at the

---

1. Honorable Edward D. Jellen, Bankruptcy Judge for the Northern District of California, sitting by designation.

2. Honorable Elizabeth L. Perris, Bankruptcy Judge for the District of Oregon, sitting by designation.

3. Unless otherwise indicated, all section references herein are to the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq., as in effect prior to October 22, 1994.

close of a future escrow for the refinance or sale of the Residence. The debtor was unable to refinance the Residence within the time provided by the Decree. At the suggestion of the superior court, Eastman quitclaimed his interest in the Residence to the debtor to facilitate the refinance. At that time, Eastman did not take back a deed of trust to secure the debtor's obligation to make the equalization payment[4].

The refinance escrow for the Residence eventually closed on March 22, 1994, and various community debts were paid from the proceeds. Eastman received $15,000 from the refinance proceeds as a real property equalization payment. According to a declaration that he filed in the debtor's bankruptcy case, however, Eastman contended that the amount of this payment was $35,000 less than the amount to which he was entitled in respect of his share of the community real property.

Additionally, the superior court had entered an order on December 3, 1993 requiring the debtor to pay Eastman the sum of $5,680.50 to equalize the distribution of the community personal property. The debtor did not make the personal property equalization payment. As a result, Eastman garnished the debtor's wages on April 12, 1994. Three days later, the debtor filed her Chapter 7 petition, whereupon Eastman filed a motion for an order dismissing the debtor's case under either Bankruptcy Code § 305(a) or § 707(a). Creditor Robyn R. Devereaux, an attorney holding a $500 unsecured claim, supported the motion.

The allegations in Eastman's motion can be summarized as follows:

1. The debtor did not refinance the Residence by the deadline that the superior court had established, notwithstanding the fact that Eastman had quitclaimed the Residence to the debtor to facilitate a refinance;

2. The unsecured nonpriority claims that the debtor listed in her bankruptcy schedules totalled $15,374, of which $14,874.51 had either been paid, or assigned to Eastman;

3. The debtor understated the value of her household goods and jewelry, and overstated the amount of property taxes due;

4. According to the Decree and closing statement for the refinance escrow, the debtor had only one unsecured creditor, with a $500 claim, at the date of the petition.

Eastman argued that the debtor had no real need for bankruptcy protection and had filed her petition in bad faith. Eastman also argued that the debtor still owed him at least $35,000 in respect of his share of the community real property, that the Decree authorized the superior court to order a sale of the Residence under this circumstance, and that the debtor should not be permitted to use Chapter 7 as a device to avoid compliance with the superior court's orders.

At the conclusion of a lengthy hearing, the court found that the debtor did not file her petition in bad faith[5], but that a dismissal would benefit the creditors and not "substantially prejudice" the debtor. The court also found that a "balancing process" dictated in favor of dismissal. Based on these findings, the court granted Eastman's motion to dismiss under § 305(a)(1). Thereafter, the debtor filed this timely appeal.

## II. *ISSUES*

Whether an order of dismissal under § 305(a)(1) is subject to appellate review by the Panel.

Whether the bankruptcy court erred in dismissing debtor's Chapter 7 case pursuant to § 305(a)(1).

---

4. After the bankruptcy court dismissed the debtor's Chapter 7 case, the superior court ordered the debtor to provide Eastman with a deed of trust on the Residence to secure an obligation in the sum of $29,000. The debtor executed a note and deed of trust on October 25, 1994, and the deed of trust was recorded October 28, 1994.

5. The official transcript of the hearing held July 13, 1994 ("Official transcript") contains an error on page 77, lines 11–12. The correct reading of Judge Barr's statement to Mr. Worcester, Eastman's counsel, is "you have *failed* to prove that in fact this was a bad faith filing" and not "you have *filed* to prove that in fact this was a bad faith filing." (Emphasis added.) At oral argument, respective counsel for Eastman and the debtor stipulated to this correction.

### III. STANDARD OF REVIEW

 When the facts are established, the rule of law is undisputed, and the issue is whether the facts satisfy the legal rule, a mixed question of fact and law arises. *Moss v. Commissioner,* 831 F.2d 833, 838 n. 9 (9th Cir.1987). We review mixed questions of fact and law *de novo. Boone v. United States,* 944 F.2d 1489, 1492 (9th Cir.1991). We also review conclusions of law *de novo. In re Holm,* 931 F.2d 620, 622 (9th Cir.1991). We review findings of fact under a clearly erroneous standard. Fed.R.Bankr.P. 8013; *In re Taylor,* 884 F.2d 478, 480 (9th Cir. 1989).

### IV. DISCUSSION

#### A. *Appellate Jurisdiction*

 Eastman contends that the Panel lacks jurisdiction to review abstention orders under Bankruptcy Code § 305(a) because such orders are not subject to appellate review. This contention is without merit. The relevant portion of § 305(c)[6] states that an order of dismissal under § 305(a) "is not reviewable by appeal or otherwise by the court of appeals ... or by the Supreme Court of the United States...."

Section 305(c) does not prohibit or restrict appeals to the Panel or the district court, but only further appeals to the circuit courts of appeal and the United States Supreme Court[7]. Consequently, we reject Eastman's challenge to our appellate jurisdiction. *See* 28 U.S.C. § 158(a); *In re Axona International Credit & Commerce Ltd.,* 924 F.2d 31, 35 (2d Cir.1991); *In re Borelli,* 132 B.R. 648 (N.D.Cal.1991).

#### B. *Dismissal Under § 305(a)(1)*

 The Bankruptcy Code contains two separate provisions under which a court may dismiss a pending Chapter 7 case involving a non-consumer debtor, notwithstanding the debtor's eligibility for relief. The broader provision is § 707(a), under which the court may dismiss a proceeding for cause. Cause is not defined, but might include a bad faith filing. *See, e.g., In re Zick,* 931 F.2d 1124, 1126–27 (6th Cir.1991). Dismissal under this provision is subject to the court's sound discretion. *Cf. In re Marsch,* 36 F.3d 825, 828 (9th Cir.1994). Here, the court declined to dismiss debtor's case pursuant to § 707(a), finding that the filing was not in bad faith.

The narrower provision is § 305(a)(1), which provides as follows:

> The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—
>
> (1) the interests of creditors and the debtor would be better served by such dismissal or suspension;

 The courts that have construed § 305(a)(1) are in general agreement that abstention in a properly filed bankruptcy case is an extraordinary remedy, and that dismissal is appropriate under § 305(a)(1) only in the situation where the court finds that both "creditors and the debtor" would be "better served" by a dismissal. *See, e.g., In re RAI Marketing Services, Inc.,* 20 B.R. 943, 945–46 (Bankr.D.Kansas 1982); *In re Martin–Trigona,* 35 B.R. 596, 598–99 (Bankr. S.D.N.Y.1983); *In re Pine Lake Village Apartment Co.,* 16 B.R. 750, 753 (Bankr. S.D.N.Y.1982). The legislative history uses the following example of such a situation:

> an arrangement is being worked out by creditors and the debtor out of court, there is no prejudice to the rights of creditors in that arrangement, and an involuntary case has been commenced by a few recalcitrant creditors to provide a basis for future threats to extract full payment.

---

**6.** The full text of § 305(c) reads as follows: "An order under subsection (a) of this section dismissing a case or suspending all proceedings in a case, or a decision not so to dismiss or suspend, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of title 28 or by the Supreme Court of the United States under section 1254 of title 28."

**7.** Prior to an amendment effective December 1, 1990, § 305(c) stated that an order of dismissal under § 305(a) "is not reviewable by appeal or otherwise." Eastman's argument that the bankruptcy court's order is not reviewable is apparently premised on the version of § 305(c) that was in effect prior to the 1990 amendment. The cases cited by Eastman in support of this argument all predate the 1990 amendment.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 325 (1977); 1978 U.S.C.C.A.N. 5963, 6281.

■ As the statutory language and legislative history demonstrate, the test under § 305(a) is not whether dismissal would give rise to a substantial prejudice to the debtor. Nor is the test whether a balancing process favors dismissal. Rather, the test is whether both the debtor and the creditors would be "better served" by a dismissal.

■ Here, the debtor had argued that the garnishment of her wages had impaired her ability to service debt on the Residence. The court responded as follows [8]:

> THE COURT: This is clearly a private battle between two parties. It happens to involve a couple of other creditors. But when I see a refinance where the vast majority of creditors were paid off followed by a bankruptcy which came right after the garnishment that came out of a dissolution proceeding, and there are no assets in the estate with which to pay unsecured creditors, and there's really no other problem, and you've admitted that, Mr. Johnson, there is no other financial problem facing the debtor except that garnishment, and it was in the midst of a dissolution proceeding that has been ongoing for years … I can draw only one conclusion, and that is that this is not an appropriate bankruptcy case.
>
> When you have a battle between a single creditor and a debtor and it's apparent from the proof, or I can infer from the proof that the filing was used to thwart further proceedings in State Court, even though there may also be a legitimate purpose in seeking the discharge of that debt, that's enough for me to dismiss the case under 305.

Thus, the court focused on the scarcity of creditors and assets. The court also acknowledged that the garnishment was a "fi-

nancial problem" for the debtor and that the debtor's filing to obtain a discharge of debt might serve a "legitimate purpose". The court, however, did not address whether the debtor would nevertheless be "better served" by a dismissal.

Similarly, Eastman had argued that the debtor owed him not only the $5,680.50 equalization payment for the personal property, but an additional $35,000 or more for the real property. Apart from any issue concerning Eastman's right to recover this amount from a superior court ordered sale of the Residence, continuation of the Chapter 7 case would have permitted the debtor to attempt to obtain a discharge of these debts as a personal liability [9].

The discussion included the following exchange between the debtor's counsel and the court [10]:

> MR. JOHNSON: Your Honor, my last comment on that is that if the dismissal is granted under 305, there is definite harm to my client because the debts are not discharged as provided for by the code, and she would be then forced to try and pay those from means that she does not have as shown by her budget.
>
> So, there is no—I do not believe that the interests have been shown that it would better serve my client to grant a dismissal under 305 as required.
>
> THE COURT: I don't think that's nearly as important a consideration as the other considerations about how creditors are affected and whether it's in the best interests of creditors. I think that the code section should be interpreted to mean that I can dismiss if the debtor is not substantially prejudiced by the dismissal, and if it better serves the creditors to do so, especially when other factors are considered, such as the fact that this is really essential-

---

**8.** Official transcript, page 64, line 12—page 65, line 8.

**9.** Effective October 22, 1994, the Bankruptcy Code was amended to add a new § 523(a)(15), under which certain debts incurred by the debtor in the course of a divorce proceeding, other than alimony and support debts, may be rendered nondischargeable. These debts could include

debts arising under a property settlement provisions of a divorce decree. Section 523(a)(15) does not apply to this case, which was filed before October 22, 1994, the effective date of the amendment.

**10.** Official transcript, page 75, line 5—page 76, line 24.

ly a two-party dispute that can be resolved in State Court.

And what I believe you may be missing, Mr. Johnson, is that if I dismiss this case, it doesn't mean the debtor can never file again.

The concern I have is the timing of the filing and the interference with the State Court process. If that process runs its due course and the debtor still needs bankruptcy relief to discharge the debt rather than simply to interfere with the final resolution of the rights between the parties, I don't really see why the debtor couldn't refile.

Or if there is some other legitimate purpose that overrides my concerns about the interference with the State Court process; that also might justify a subsequent filing.

But for me to just grant relief from the stay and leave the case to run its course when the trustee has file[d] a no-asset report, just seems to serve no legitimate purpose that would outweigh the interest of the State Court and the interest of the moving party here in resolving property rights in property that the estate really has no interest in, this bankruptcy estate has no interest in, or the trustee doesn't, and which will not serve creditors in this case one wit.

And it's a balancing act, it's a balancing process that I must undertake here, and I think that on balance, the case should be dismissed. So, it is.

Thus, the court found that the debtor would not be "substantially prejudiced" by a dismissal and that a "balancing process" tipped in favor of the creditor. Again, the court did not determine whether the interests of the debtor would be "better served" by a dismissal [11].

Our conclusion is not altered by the fact that exemptions under nonbankruptcy law would be available to the debtor after a dismissal. The possibility that the debtor might be able to obtain some relief from future garnishments is clearly not the beneficial equivalent to the debtor of a bankruptcy discharge and the permanent relief that it would provide.

Nor are we persuaded by Devereaux's arguments that dismissal was justified here because it permitted the debtor to avoid both criminal prosecution for the alleged falsities in her bankruptcy schedules, and an action to bar her discharge under § 727(a). As to the former, the court made no finding that the debtor falsified her bankruptcy schedules. Moreover, even if the debtor did falsify them with a fraudulent intent, Devereaux has not shown that mere dismissal of the bankruptcy case would immunize the debtor from prosecution. As to the latter, Devereaux has not shown how a dismissal and the resulting denial of any opportunity for a discharge, even at the risk of an action under § 727(a), would better serve the debtor than an opportunity for a discharge.

Devereaux's final argument is that debtor filed her petition in bad faith, and that dismissal was therefore justified. The bankruptcy court found to the contrary, and neither Devereaux nor Eastman appealed that ruling. We therefore reject this argument.

## V. CONCLUSION

For the foregoing reasons, we reverse the bankruptcy court, vacate the order of dismissal, and remand this matter to the bankruptcy court so that it may rule on Eastman's motion to dismiss under § 305(a)(1) in accordance with the standards and considerations discussed herein.

---

11. It is true that the court did not prohibit a future refiling by the debtor. Congress enacted new § 523(a)(15) after the court had ruled on Eastman's motion, and this provision was therefore not before the court at the time of its ruling. Because new § 523(a)(15) would be applicable in any new case, however, and might preclude the discharge of the debtor's debts to Eastman in such new case, *see* n. 9, *supra*, the court may take this provision into account when it considers on remand whether a dismissal would "better serve" the debtor.